IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 10-cv-02653-WYD-CBS

MASON L. RAMSEY, and
JUDITH MAE NEVILLE,
    Plaintiffs
v.

CITIBANK, N.A.,
CITIMORTGAGE, INC., and
DOES 1-10,
    Defendants.

---

## RECOMMENDATION ON DEFENDANTS CITIBANK, N.A. AND CITIMORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

---

Magistrate Judge Shaffer

THIS MATTER comes before the court on Defendants Citibank, N.A. and CitiMortgage, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (doc. #32), filed on February 11, 2011. *Pro se* Plaintiffs Mason L. Ramsey and Judith Mae Neville filed their Opposition to Defendant's (sic) Motion to Dismiss (doc. #36) on February 22, 2011. Defendants filed a Reply in Further Support of Motion to Dismiss Plaintiffs' First Amended Complaint (doc. #38) on March 10, 2011. Pursuant to the Order of Reference to United States Magistrate Judge (doc. #5), dated November 4, 2010, and the memorandum dated February 11, 2011 (doc. #33), the subject motion was referred to this Magistrate Judge. I have carefully reviewed the Motion to Dismiss and related briefing and exhibits, taken judicial notice of the court's entire file and considered the applicable case law. For the following reasons, I conclude that Defendants' motion should be granted.

1

# FACTUAL BACKGROUND

The historical antecedents of this action are largely undisputed and may be gleaned from

Plaintiff's First Amended Verified Complaint, the parties' briefing and attached exhibits.[1]   It

appears to be undisputed that on or about November 18, 2005, Plaintiff Neville executed a

promissory note to obtain a loan for $204,000 from Decision One Mortgage Company, LLC in

conjunction with the purchase of property located at 15881 East Girard Place, Aurora, Colorado

(hereinafter "the subject property").  *See* Exhibit 1 (doc. #32-2) attached to Defendants' Motion

to Dismiss Plaintiffs' First Amended Complaint.  Also on November 18, 2005, Ms. Neville and

Plaintiff Ramsey executed a Deed of Trust pledging the subject property as collateral for the

obligation to Decision One Mortgage Company, LLC.  The Deed of Trust specifically

empowered the lender or any successor or assign "to invoke the power of sale and any other

remedies permitted by Applicable Law."[2]  *See* Exhibit 2 (doc. #32-2), at p. 16 of 20, attached to

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

> In Colorado, consensual liens against real property are created by
> recordation of a deed of trust granted by the lender to the public trustee of the
> county where the property is situated.  Foreclosure of such liens is a hybrid
> process governed by statute.  The process involves issuance of orders by the state
> district court authorizing and confirming the sale.  C.R.C.P. 120; § 38-38-105,
> C.R.S.  However, the process of conducting the sale and the parties' rights in

[1]The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *United States ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992 (cited in *City of Philadelphia v. Fleming Companies Inc.*, 264 F.3d 1245, 1251 n. 4 (10th Cir. 2001)).

[2]The Deed of Trust states that the parties' rights and obligations "shall be governed by federal law and the law of the jurisdiction in which the Property is located."  *See* Exhibit 2 (doc. #32-2), at p. 14 of 60, attached to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

such process are largely administrative.

Upon default, if the deed of trust so authorizes, the lender or holder of the note may direct the public trustee to sell the property at a foreclosure sale. § 38-38-101(1), C.R.S. The lender must also seek an order from the state district court authorizing the sale under Rule 120. Once a sale is authorized, the public trustee advertises and conducts the sale. § 38-38-101(4), C.R.S. The property is sold to the highest bidder who receives a Certificate of Purchase. Often, the purchaser is the holder of the deed of trust who bids all or part of the debt owed by the borrower.

. . . After sale, the borrower and any junior lienholders may redeem the title to the property by paying, to the holder of the Certificate of Purchase, the sum for which the property was sold with interest from the date of sale, together with any taxes paid or other proper charges. See § 38-38-101 to § 38-38-103, C.R.S. . . . If the redemption period passes, the holder of the Certificate of Purchase may seek an order confirming the sale and obtain a Trustee's Deed.

*Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC,* 2007 WL 1346591 * 2

(D. Colo. May 7, 2007). The Deed of Trust was recorded against the subject property on or

about December 9, 2005. The promissory note subsequently was transferred to Defendant

CitiMortgage, Inc.

CitiMortgage, Inc. filed with the Arapahoe County Clerk and Recorder a Notice of

Election and Demand for Sale on July 30, 2009, based upon Plaintiffs' alleged failure to make

the payments required by the Deed of Trust and corresponding promissory note. *See* Exhibit 3

(doc. #32-2) attached to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

On September 14, 2009, CitiMortgage, Inc. moved in Arapahoe County District Court for an

Order Authorizing Sale of the subject property in Case No. 2009-CV-204434 (hereinafter "the

Rule 120 Proceeding"). *See* Exhibit 4 (doc. #32-2) attached to Defendants' Motion to Dismiss

Plaintiffs' First Amended Complaint.

It appears that Plaintiffs received notice of CitiMortgage Inc.'s motion and the related

Rule 120 Proceeding.  Ms. Neville and Mr. Ramsey filed in the Rule 120 Proceeding a motion to

compel, an "Affidavit of Negative Averment, Opportunity to Cure and Counterclaim," as well as

additional affidavits, exhibits and proposed orders.  *See* Exhibits 6 and 7 (doc. #32-2) attached to

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.  Ms. Neville and Mr.

Ramsey were physically present at a Rule 120 hearing conducted by the Arapahoe County

District Court on October 13, 2009.  *Id.*  During that hearing, the state court "examined the

documents produced by Citimortgage, Inc. and determined that they were not incorrect and had

not been altered."  The court apparently also advised Ms. Neville and Mr. Ramsey that

"[p]roceedings under Rule 120 are not adversarial proceedings in which a court determines

issues and enters final judgment."  Ms. Neville and Mr. Ramsey were told that "if they wanted to

pursue other claims or issues, that needed to be done in a separate civil action not in a Rule 120

proceeding." *Id.*

On October 29, 2009, Arapahoe County District Court Judge Charles M. Pratt entered an

Order Authorizing Sale after finding that "there is reasonable probability that: a default exists as

alleged in the Motion in order to invoke the power of sale in said Deed of Trust; that the

provisions of C.R.C.P. Rule 120 and the Servicemembers Civil Relief Act, as amended, have

been complied with; that the venue in this action is proper; and that the order authorizing sale

should be granted."  *See* Exhibit 5 (doc. #32-2) attached to Defendants' Motion to Dismiss

Plaintiffs' First Amended Complaint.  Judge Pratt permitted the sale by the Public Trustee to

proceed and directed that "a return of such sale shall be made to this Court for its approval."  *Id.*

As of November 20, 2009, Ms. Neville and Mr. Ramsey had not "elected to proceed with an

independent action" against Citibank, N.A. or CitiMortgage, Inc. and had not "sought relief from

4

the Colorado Supreme Court in the form of an original proceeding pursuant to Colorado

Appellate Rule 21." *See* Exhibit 8 (doc. #32-2) attached to Defendants' Motion to Dismiss

Plaintiffs' First Amended Complaint.

Judge Pratt set a rehearing in the Rule 120 Proceeding for September 1, 2010.  In his

Order, Judge Pratt indicated that he would hear legal argument from the parties and consider

"whether the additional issues raised by Respondents Neville and Ramsey are properly before

the Court in this Rule 120 proceeding." *See* Exhibit 10 (doc. #32-2) attached to Defendants'

Motion to Dismiss Plaintiffs' First Amended Complaint.  The 15881 East Girard Place property

was the subject of a Public Trustee Foreclosure Sale on October 13, 2010, where it was

purchased by CitiMortgage Inc. as the highest bidder.  *See* Exhibit 11 (doc. #32-2) attached to

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.  There is no evidence in

the record to indicate whether the Arapahoe County District Court had entered an order

approving the Public Trustee's sale prior to Plaintiffs' commencement of the instant action on

October 29, 2010.

On October 28, 2010, CitiMortgage, Inc. filed a Forcible Entry and Detainer action

(hereinafter "the FED Action") against Ms. Neville and Mr. Ramsey seeking their eviction from

the subject property.  *See* Exhibit 13 (doc. #32-2) attached to Defendants' Motion to Dismiss

Plaintiffs' First Amended Complaint.  The Arapahoe County District Court entered a Judgment

for Possession in favor of CitiMortgage, Inc. in the FED Action on November 12, 2010.[3]  *Id.*

---

[3]On December 13, 2010, less than two months after commencing their federal lawsuit, Ms. Neville and Mr. Ramsey filed a lawsuit in Arapahoe County District Court (hereinafter "the 2671 Action") seeking money damages against CitiMortgage, Inc., among other defendants. *See* Exhibit 12 (doc. #32-2) attached to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

The FED Action concluded after Ms. Neville and Mr. Ramsey filed this case.

## ANALYSIS

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 2010 WL 437335, at *3 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id.*  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." 493 F.3d 1174, 1177 (10th Cir. 2007).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Id.*

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  For a complaint to state a claim it must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8(a)'s short and plain statement mandate requires

that a plaintiff allege enough factual matter that, taken as true, makes his claim to relief . . . plausible on its face.

The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.  In doing so, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  However, the Court need not accept conclusory allegations.

Generally, [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief.  Even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.  The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777, at *2 (D. Colo. 2009) (internal quotation marks and citations omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

A.      *The Rooker-Feldman Doctrine*

As a threshold matter, Defendants argue that "Plaintiff's claims . . . are barred by the *Rooker-Feldman* doctrine because CitiMortgage's right to foreclose on and possess the property have already been litigated and decided in state court."  *See* Defendants' Motion to Dismiss, at 7. Although the caption of Defendants' Motion specifically invokes Fed. R. Civ. P. 12(b)(6),  the *Rooker-Feldman* doctrine implicates the federal court's subject matter jurisdiction.  *Cf. Guttman v. Khalsa*, 401 F.3d 1170, 1173 n. 2 (10th Cir.) (holding that *"Rooker-Feldman* is a matter of

federal law and operates as a subject-matter jurisdictional bar that may be raised at any time"), *judgment vacated on other grounds*, 546 U.S. 801 (2005). *See also Kenmen Engineering v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002) ("The *Rooker-Feldman* doctrine is a *jurisdictional* prohibition") (emphasis in original), *overruled in part on other grounds by Exxon Mobil Corp. V. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005) and *Lance v. Dennis*, 546 U.S. 459, 465-66 (2006).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter.  In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ." *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

The *Rooker-Feldman* doctrine is based upon an inference that follows from 28 U.S.C. § 1257(a) which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." *Guttman v. Khalsa*, 401 F.3d at 1173. "In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416 (1923), the Supreme Court held that lower federal courts may not hear claims actually decided by a state court." *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004) (citing *Kenmen*, 314 F.3d at 476, *overruled in part on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), *as recognized in Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 790 (10th Cir.2008)). "Sixty years later in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983), the Court

8

extended the holding of *Rooker* to claims that are 'inextricably intertwined' with a state court judgment." *Id. See also Guttman v. Khalsa*, 401 F.3d at 1173 ("Under the doctrine that has arisen from two Supreme Court cases, . . . a federal district court does not have subject matter jurisdiction to hear appeals from final judgments of state courts").

However, the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). *See also Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1143 (10th Cir. 2006) ("Appellate review – the type of judicial action barred by *Rooker-Feldman* – consists of a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law"); *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1169 (10th Cir.1998) (under the *Rooker-Feldman* doctrine, a party who loses in state court is barred "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

In the wake of the Supreme Court's decision in *Exxon Mobil*, the Tenth Circuit has held that *Rooker-Feldman* applies only to federal suits that are filed after state proceedings are final. *See Guttman v. Khalsa*, 446 F. 3d  1027, 1032 (10th Cir. 2006). *See also Allen v. National City Bank of Pennsylvania*, 2007 WL 2341010, *5 (D. Colo. 2007). The Tenth Circuit has identified "several situations in which a state-court judgment could be considered final for *Rooker-Feldman* purposes . . . ." *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006) (citations omitted). For example, a state court judgment would be considered final for purposes of *Rooker-Feldman*

where "a lower state court issues a judgment and the losing party allows the time for appeal to expire," or "if the state action has reached a point where neither party seeks further action." *Id.* at 642.

At this juncture, this court does not have sufficient information to determine with certainty whether Plaintiffs are seeking what in substance would be impermissible appellate review of a "final judgment" entered by the Arapahoe County District Court in the Rule 120 Proceeding or the FED Action.

Defendants contend, and Plaintiffs apparently do not dispute, that on October 29, 2009, the Arapahoe County District Court issued an Order Authorizing Sale in the Rule 120 Proceeding. The subject property ultimately was sold on October 13, 2010. This court has not been provided with any information indicating whether or when the Arapahoe County District Court entered an order approving that sale. However, I note that Rule 120 states that "[t]he court shall require a return of sale be made to the court" and that the court "shall . . . enter an order approving the sale" if it appears that the sale was in conformity with the authorization for sale. *See* C.R.C.P. 120(g). Based upon the foregoing chronology of events, this court cannot conclude that Ms. Neville and Mr. Ramsey are seeking relief for harms caused by final state-court action rendered before this federal proceeding commenced on October 29, 2010. Therefore, this court declines to dismiss the action pursuant to the *Rooker-Feldman* doctrine. *Cf. Brode v. Chase Home Finance, LLC*, 2010 WL 2691693, at *6 (D. Colo. 2010) (holding that plaintiff's claims were not barred by *Rooker-Feldman* where the state court had not issued a final approval of the Public Trustee's sale). *Compare Rousseau v. Bank of New York*, 2009 WL 3162153, at *1 (D. Colo. 2009) (plaintiff filed the *pro se* complaint after the subject property had

been sold at a public trustee sale and the state district court entered an order approving that sale).
However, resolution of the *Rooker-Feldman* issue in this case is unnecessary given the fatal
deficiencies in Plaintiffs' claims for relief.

B.      The Bivens Claim

Plaintiffs' "First Cause of Action" asserts a due process violation under the Fifth
Amendment to the United States Constitution.  Ms. Neville and Mr. Ramsey purport to bring a
*Bivens* claim based upon Defendants' "use of non-judicial foreclosures by power of sale
provisions" established by state law;  non-judicial proceedings that Plaintiffs insist are
"repugnant to the 5th Amendment."  Plaintiffs maintain that the "manner of foreclosure" by a
"federal chartered corporation" "must be done under federal law."  While this court does not
question Plaintiffs' commitment to this theory, their *Bivens* claim finds no support under
prevailing law.

Plaintiff's first claim is premised, in part, on the belief that some unspecified federal law
establishes a foreclosure procedure that overrides state law.  To the contrary, "[i]n the absence of
any controlling federal law, 'property' and 'interests in property' are creatures of state law."
*Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).  *Cf. United States v. Bussell*, 504 F.3d 956, 968
(9th Cir. 2007) (observing that "[t]rust deeds are generally creatures of state law").
"[F]oreclosure proceedings are generally handled by state courts, not federal courts, and the
propriety of determining whether a foreclosure is appropriate is a matter of state law, not federal
law." *Sobh v. Bank of America, N.A.*, 2011 WL 2792449, at *1 (E.D. Mich. 2011).  *Cf. Debiasse
v. Chevy Chase Bank Corp.*, 144 Fed. Appx. 245, 247 (3rd Cir. 2005) ("Foreclosure is a
contractual matter, governed by state law."); *Edward v. Dubrish*, 2009 WL 1683989, at *11 (D.

Colo. 2009) (noting that foreclosure proceedings "are matters governed by state law and are traditionally resolved in state courts"); *In re Gantz*, 162 B.R. 890, 898 (D. Wyo. 1994) ("It has been stated that the law regarding foreclosures is one area that is 'traditionally controlled by state law.'").

More to the point, Plaintiffs cannot bring a *Bivens* claim against Citibank N.A. and CitiMortgage, Inc.  In *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001), the United States Supreme Court declined to extend to private corporations the implied private cause of action recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) because "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."  *Cf. Jallali v. American Osteopathic Assn*, 2011 WL 2601257, at *6 (S.D. Fla. 2011) (holding that "*Bivens* only contemplates suit against the federal government or its employees; a *Bivens* claims does not lie against a private company"); *Richards v. Duke University*, 480 F. Supp. 2d 222, 238-39 (D.D.C. 2007) (after noting that constitutional protections of individual rights and liberties only apply to actions by governmental bodies, declined to extend a *Bivens* action to private or corporate entities).

To avoid the consequences of this settled law, Ms. Neville and Mr. Ramsey attempt to characterize Citibank N.A. and CitiMortgage, Inc. as "federal instrumentalities" by virtue of the fact their operations are "regulated and controlled" through the Office of the Comptroller of the Currency.  Plaintiffs contend that "[w]hen the Government creates a corporation through which it lawfully acts, the activities of the corporation are **governmental** and not **proprietary**," citing *Federal Land Bank v. Bismark Co. of St. Paul*, 314 U.S. 94 (1941) as support for their position. *See* First Amended Verified Complaint, at ¶ 12 (emphasis in original).  Plaintiffs reliance on that

decision is misplaced.  The Supreme Court in *Federal Land Bank* simply held that as a federal instrumentality, the Federal Land Bank of St. Paul was immune from assessments under the Sales Tax Act of North Dakota.  That precedent cannot be stretched so far as to create liability under *Bivens* for national banks.

To the contrary, several appellate and district courts have held that there is no right of action for damages against a private entity for an alleged violation of constitutional rights, even if the putative defendant is subject to supervision and regulation by the federal government.  *Cf. Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217-19 (4th Cir. 1993) (noting that the Home Loan Bank's operations are characteristic of a private institution and that the Home Loan Bank performs functions that are not traditionally and exclusively public functions); *Morast v. Lance*, 807 F.2d 926, 931 (11th Cir. 1987) (declining to extend the *Bivens* cause of action to a nationally chartered bank), *overruled on other grounds by Haddle v. Garrison*, 525 U.S. 121 (1998); *Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927, 932  n.8 (1st Cir. 1974) (federal regulation of a national bank will not support a *Bivens* cause of action against that bank); *Tare v. Bank of America*, 2009 WL 799236, at *10 (D. N.J. 2009) (holding that a national bank was not a federal officer for purposes of *Bivens*); *Panis v. Mission Hills Bank, N.A.*, 1993 WL 390399, at *4 (D. Kan. 1993) ("Although Mission Hills Bank is a national bank, it is a private organization, not a governmental entity . . . for purposes of *Bivens* or section 1983 actions").

Even if Defendants could be the subject of a *Bivens* claim, Plaintiffs "First Cause of Action" fails to properly allege a due process violation under the facts of this case.  "The fundamental requisite of due process of law is the opportunity to be heard" at a meaningful time

13

and in a meaningful manner. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). *See also Robinson v. Hanrahan*, 409 U.S. 38, 39-40 (1972) (an "elementary and fundamental requirement of due process" is "notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342 (1969) (holding that an obvious taking of property would violate "fundamental principles of due process" in the absence of notice and a prior hearing). It appears to be undisputed that in this case, Ms. Neville and Mr. Ramsey received actual and timely notice of the Rule 120 Proceedings and the subsequent FED Action, and in each action were afforded an opportunity to be heard.

Plaintiffs contend, however, that they were denied due process because the Rule 120 Proceeding did not "provide a full and fair hearing, nor [did] it provide appellate review." In support of this argument, Plaintiffs rely on *Lindsey v. Normet*, 405 U.S. 56 (1972). In point of fact, Ms. Neville and Mr. Ramsey miss the significance of that decision. In *Lindsey*, the plaintiffs challenged Oregon's Forcible Entry and Wrongful Detainer Statute which, in part, limited the triable issues in a FED action to physical possession and legal right to possession and precluded consideration of affirmative defenses predicated on the landlord's own conduct. Like Rule 120 of the Colorado Rules of Civil Procedure, the Oregon statute did not prevent the evicted tenant from bringing his own action against the landlord or seeking affirmative relief in a subsequent lawsuit. *Id.* at 66. In striking down the plaintiffs' due process challenge to the Oregon statute, the Supreme Court in *Lindsey* held that "it is permissible to segregate an action for possession of property from other actions arising out of the same factual situation that may assert valid legal or equitable defenses or counterclaims." *Id.* at 67. *Cf. United Guaranty Residential Insurance Co.*

*v. Vanderlaan*, 819 P.2d 1103, 1105 (Colo. App. 1991) (the primary purpose of a Rule 120 hearing is "to test whether, considering all relevant evidence, there is a reasonable probability that a default exists;" a collateral action is generally necessary to resolve all other issues).

Rule 120 specifically provides that granting a motion for sale does not prejudice the right of any person aggrieved by that order from "seek[ing] injunctive or other relief in any court of competent jurisdiction." Indeed, it appears that Ms. Neville and Mr. Ramsey were informed on November 6, 2009 that they would need to bring a separate action if they wished to pursue other claims and issues relating to the subject property. *See* Exhibits 6 and 7 (doc. #32-2) attached to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. Ms. Neville and Mr. Ramsey were told they could pursue their claims against CitiMortgage, Inc. by "filing the pleading containing [their] Counterclaim as a Complaint in a new Civil Action" or by "prepar[ing] and [fil[ing] a new Complaint in compliance with the Rules of Civil Procedure setting forth their claims against CitiMortgage, Inc. and stating the relief they are seeking from the Court." *Id*. As of November 20, 2009, when the Arapahoe County District Court entered its "Order re: Post Hearing Motions," Ms. Neville and Mr. Ramsey had not initiated an independent action, *see* Exhibit 8 (doc. #32-2) attached to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, but they continued to file submissions in the Rule 120 Proceeding. On July 12, 2010, the Arapahoe County District Court entered an Order finding that none of the submissions by Ms. Neville and Mr. Ramsey between November 27, 2009 and June 30, 2010 were "properly filed in this Rule 120 action." *See* Exhibit 9 (doc. #32-2) attached to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. The state court, however, went on to note that "by this action, [it was] not addressing the merits of any issues that may be raised in

15

such filing should they be properly filed in a separate civil action and properly brought before the Court." *Id.*

In short, the record is clear that Plaintiffs were actively engaged in the Rule 120 Proceeding and continued to file materials to the state court even after that action concluded and an Order Authorizing Sale was entered. Moreover, the state court repeatedly advised Ms. Neville and Mr. Ramsey of their right to pursue an independent action against CitiMortgage.[4] Under the circumstances, Plaintiff's cannot plausibly argue that the Rule 120 Proceeding compromised or infringed upon their due process rights.[5] *Cf. Moreland v. Marwich, Ltd.*, 629 P.2d 1095, 1097 (Colo. App. 1981) (holding that a Rule 120 proceeding did not involve a denial of due process where the debtor was able to file an independent action to protect their property, but failed to take advantage of that opportunity), *rev'd on other grounds*, 665 P.2d 613 (Colo. 1983).

C.    *The § 1983 Claim*

Plaintiffs' "Second Cause of Action," brought under 42 U.S.C. § 1983, alleges that Colorado's Forcible Entry and Detainer ("FED") statute, C.R.S. § 13-40-101 *et seq.*, is unconstitutional as applied to the facts in this case to the extent it allowed Defendants "to complete the deprivation of property without procedural due process." Once again, Ms. Neville and Mr. Ramsey advance a claim that finds no support in the law.

---

[4]Certainly, Plaintiffs had the ability to bring their own action in response to the Rule 120 Proceeding, as evidenced by the 2671 Action filed on December 13, 2010.

[5]The court notes that in their Opposition to Defendant's Motion to Dismiss, Plaintiffs contend they were subjected to "disparate treatment consistent with the Denial of the Equal Protection of the Law." There is no "equal protection" claim specifically set forth in the First Amended Verified Complaint and Plaintiffs' Fifth Amendment "cause of action" is framed only in terms of a due process violation. This court will not consider a new claim for relief which was raised for the first time in a response brief. *Cf. Turner v. McKune*, 2001 WL 1715793, at *3 n.1 (D. Kan. 2001).

To assert a claim under § 1983, Ms. Neville and Mr. Ramsey must allege a deprivation of a federal or constitutional right by a person acting under color of state law. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). As the foregoing analysis makes clear, Plaintiffs have failed to allege facts that would establish a violation of their constitutional rights. *Cf. Butler v. Farner*, 704 P.2d 853, 857-58 (Colo. 1985) (holding that the Colorado FED statute on its face does not violate due process). *See also Hurricane v. Kanover, Ltd.*, 651 P.2d 1218, 1222 (Colo. 1982) (holding that Colorado's FED procedures did not deprive the plaintiff of property without due process; a subjective expectation of continued possession is not protected by procedural due process).

Moreover, § 1983 does not impose liability in the absence of action by a person acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). If the defendant's conduct does not qualify as state action, then the inquiry into § 1983 liability ends. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Here, Defendants argue that Plaintiffs have not alleged facts that would satisfy the "color of law" element of a § 1983 claim.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Purely private acts are not consider acts under color of state law unless that conduct is furthered by an actual or purported state authority. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). *See also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (court must determine whether the private party's "conduct has sufficiently received the imprimatur of the State so as to make it 'state action' for purposes of the Fourteenth Amendment"). To be "fairly attributable to the

state,"

> [f]irst, the "deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible."  Second, the private party must have "acted together with or . . . obtained significant aid from state officials or engaged in conduct 'otherwise attributable to the State.'"

*Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) (citations omitted).

Construed in a light most favorable to Plaintiffs, the First Amended Verified Complaint alleges that Citibank N.A. and CitiMortgage, Inc. utilized Colorado's Forcible Entry and Detainer statute to consummate the foreclosure proceedings initiated under Rule 120.  In essence, Plaintiffs allege that Defendants' invocation of Colorado's Forcible Entry and Detainer statute constituted a "malicious abuse of process."  Yet, as the Supreme Court noted in *Lugar v. Edmonson Oil Company, Inc.*, 457 U.S. 922, 940 (1982), a plaintiff does not satisfy the "state action" element of a § 1983 action by alleging the deprivation of property through unlawful or malicious conduct committed by a private actor.  To the extent that Ms. Neville and Mr. Ramsey contest the legal merits of Defendants' eviction efforts, that challenge will not suffice to transform Citibank N.A. or CitiMortgage, Inc. into agents of the state.

"Merely instituting a routine civil suit does not transform a litigant's actions into those taken under color of state law."  *Hirsch v. Copenhaver*, 839 F. Supp. 1524, 1531 (D. Wyo. 1993) (quoting *Tunstall v. Office of Judicial Support of Court of Common Pleas*, 820 F.2d 631, 634 (3rd Cir. 1987)).  The Tenth Circuit has held that a private party does not become a state actor simply by seeking relief through state judicial proceedings.  *Cf.  Scott v. Hern*, 216 F.3d 897, 906-07 (10th Cir. 2000) (private individual does not engage in state action simply by availing itself of a state procedure).  "It is well established that mere recourse to state or local court procedures does not

by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983." *Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991).  Similarly, relief under § 1983 cannot be premised solely on an argument that a private actor misused available state procedures, particularly in the absence of overt and significant assistance from state officials. *Cobb v. Saturn Land Company, Inc.*, 966 F.2d 1334, 1336-37 (10th Cir. 1992).  Notably, Plaintiff's Second Cause of Action alleges no active involvement by any state official.

D.      *State Law Claim*

Finally, Plaintiffs have asserted a "cause of action" for "negligent or intentional infliction of extreme emotional distress."  Ms. Neville and Mr. Ramsey allege that "the adjustable rate mortgages that the defendants extended to sub-prime borrowers with no proof of income introduced an unacceptable risk," Defendants' failure to offer Plaintiffs "a loan modification," and the "ensuing foreclosure and eviction caused plaintiffs' extreme emotional distress over the loss of their house that they called home for the past ten years."  Defendants have moved to dismiss this claim, arguing that Plaintiffs have failed to allege any facts that would support a viable claim for emotional distress.

Under Colorado law, "the level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high."  *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* quoting *Rugg v. McCarty*, 476 P2d 753,756 (1970)).  The First Amended Verified Complaint fails to allege any facts that would sustain a claim for intentional infliction of emotional distress.

19

*Cf. Northern Natural Gas Company v. L.D. Drilling*, 2010 WL 3892227, at *4 (D. Kan. 2010)
noting that a defendant is "never liable . . . where he has done no more than insist upon his legal
rights in a permissible way, even though he is well aware that such insistence is certain to cause
emotional distress'). *Accord* CJI-Civ. 23.5 (2011 ed). While this court does not discount the
stress associated with involuntary foreclosure proceedings, the First Amended Verified Complaint
offers nothing more than a conclusory assertion of "extreme emotional distress." That allegation
is insufficient to state a claim for negligent or intentional infliction of emotional distress. *Cf.
Ramos v. Countrywide Bank, FSB*, 2009 WL 3584327, at *5 (D. Utah 2009).

**CONCLUSION**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that  Defendants
Citibank, N.A.'s and CitiMortgage, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint
Pursuant to Fed. R. Civ. P. 12(b)(6) (doc. #32) be GRANTED.  I further RECOMMEND that the
action be dismissed with prejudice as no amendment could cure the legal deficiencies in the
claims advanced by Plaintiffs . *Cf. Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001).

**Advisement to the Parties**

Within fourteen days after service of a copy of a Magistrate Judge's order, a party may
serve and file written objections to the order. Fed. R. Civ. P. 72(a). "A judge of the court may
reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is
clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). *See also* Fed. R. Civ. P. 72(a)
("The district judge in the case must consider timely objections and modify or set aside any part
of the order that is clearly erroneous or is contrary to law."). Failure to make timely objections to

the Magistrate Judge's order(s) may bar review by the District Judge and will result in a waiver of the right to appeal. *See Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) ("We have adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate. The failure to timely object to a magistrate's recommendations waives appellate review of both factual and legal questions.") (quotations, citation, and brackets omitted); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)").

DATED this 28th day of July, 2011.

BY THE COURT:


  s/Craig B. Shaffer
United States Magistrate Judge